(Vinton County Common Pleas.)

D. A. MARTINDILL, as treasurer of Vinton county O., v. SARAH A. SANGER, et al., widow and heirs at law of Jacob Sanger, dec'd.

Where ministerial section number twenty-nine in the Ohio Company's Purchase was held under a lease for ninety-nine years, renewable forever, but subject to revaluation every fifteen years, and against which taxes assessed upon the fee stood charged on the duplicate in the name of the widow and heirs at law of the lessee, in an action brought by the county treasurer against said widow and heirs at law to recover judgment for the taxes so assessed and subject said lands to the payment thereof, Held:

1. That said lands are not subject to taxation and said assessment was unauthorized.

2. That section 2733, Revised Statutes, only imposes a tax on the lessee's interest in the lands described therein, and it does not apply to a lease of such lands, although for a term of more than fourteen years, if by the stipulations of the lease the lands, as between the lessor and lessee, are subject to revaluation.

3. That if section 2733 was applicable to such case, the lands being subject to revaluation every fifteen years, the lessee's interest is not regarded as of substantial value and there is nothing to tax.

(Decided August 20th, 1901.)

Coultrap, J.

This cause is submitted upon demurrer to the petition. The action is brought by the county treasurer to recover judgment for the amount of certain taxes assessed against the fee of ministerial section numbered twenty-nine of Madison township, Vinton county, Ohio— the same being situate in what is known as the Ohio Company's Purchase, and also to subject said lands to the payment of said judgment. The defendants are the widow and heirs at law of Jacob Sanger deceased, who died seized of a leasehold estate in said lands for the term of 99 years from and after the second day of November, 1852, renewable forever and subject to revaluation every fifteen years. The amount claimed is alleged to be due plaintiff for taxes assessed for purposes authorized by law and penalties thereon that now stand charged upon the general duplicate of the county against said lands.

The important question presented for determination is whether or not these lands are subject to taxation. Section 2, article 12, of the constitution of Ohio requires that laws shall be passed taxing by a uniform rule all property, real and personal, according to its true value in money, but provides that "burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property to an amount not exceeding in value two hundred dollars for each individual, may," by general laws, be exempted from taxation."

Conceding, for the present, that this provision of the constitution does not authorize the exemption of these lands from taxation, it is a well known fact that from the earliest period of the history of the state to the adoption of the present constitution, it was the policy of the state to exempt from taxation both the school lands and lands set apart for religious purposes. This legislation was in compliance with that clause of the old constitution of the state which required that schools and means of instruction should be forever encouraged by legislative provision. Bill of Rights. Old Constitution, Article 3, section 3; 10 Ohio 253.

Substantially the same words are found in the Bill of Rights, article 1, section 7, of the new constitution:— "Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship and to encourage schools and the means of instruction."

It is difficult, therefore, to see why, if school lands might be exempted from taxation under the old constitution, they may not be exempted under the new. But it is contended that no positive enactment of the legislature can be found anywhere expressly exempting these lands from taxation. Section 2733, Revised Statutes, relied upon by defendants, does so, if at all, only by implication. It is an affirmative and taxing section (Bently v. Barton, 41 Ohio St., 410-413), and was intended by the legislature to make taxable the leaseholds therein mentioned, and which were exempted by the preceding section. It is claimed, however, that by the amendment of this section, February 17, 1881, (78 O. L., 52), and the insertion of the clause, "and not subject to revaluation," said leaseholds were, if not expressly, at least by implication exempted from taxation. It must be conceded that there is force in this contention, notwithstanding the rule that exemptions from taxation are not looked upon with favor, and provisions of law exempting property from taxation must be strictly construed. But, as stated by Judge Shauck in Zumstein, Treas. v. Coal & Mining Co. et al., 54 Ohio St., 271:— "By the terms of the section, it does not apply to lands held under leases for terms shorter

than fourteen years, nor to those held for longer terms, if by the stipulations of the lease the lands are as between the lessor and lessee, subject to revaluation." The lands in question here are by the terms of the lease itself subject to revaluation. It may be observed, however, that prior to the amendment of February 17, 1881, school lands were held to be taxable under this section after sale or lease by the state. *Bently* v. *Barton*, cited above. As the section now stands, it is conceded that they are not taxable if subject to revaluation. The effect of the amendment, therefore, was to except such lands from the operation of the statute under which they had previously been taxable. Did the amendment also except ministerial lands from the operation of the statute? Both classes of land are coupled together in the same clause of section 2733 and other sections of the statutes, and both appear to have been treated by the legislature and courts of the state from the time of their organization as being vested in the state for the purposes for which they were set apart by Congress. I am now speaking of sections 16 and 29 reserved and excepted from the grant to the agents of the Ohio Company of Associates, commonly known as the Ohio Company's Purchase, and of which the lands in question in this action are part. It is true that Congress proposed to the convention assembled to form a constitution for the state, that section numbered sixteen in every township should be given to the inhabitants of the township for the use of schools, and that this proposition was accepted with the modification subsequently assented to by Congress, that all lands appropriated for the use of schools be vested in the legislature of the state, in trust for said purpose 1 Chase Statutes, 70; 41 Ohio St., 412.

But this stipulation in the act admitting Ohio into the Union could have had no special reference to section 16 of the several townships in the Ohio Company's Purchase, for that section, as well as ministerial section 29, had already been appropriated and set apart for school and religious purposes. The contract of the Ohio Company of Associates with the Board of Treasury of the United States made on the 27th day of October, 1787, the act of Congress, approved April 27, 1792, authorizing the grant and conveyance to said company, and the letters patent for said lands issued by the president on the 10th day of May, 1792. all reserved and excepted from the grant section number sixteen for the purposes mentioned in the ordinance of May 20, 1785, and lot number twenty-nine to be appropriated to the purposes of religion. The ordinance of May 20, 1785, referred to, and which was issued by

Congress for the survey and sale of the Northwest Territory, provided that "there shall be reserved lot sixteen of every township for the maintenance of public schools within said township." This grant to the Ohio Company of Associates also contained a reservation and exception of two complete townships for the purposes of a university, "to be applied in such manner to the object as the legislature of the state wherein the said townships shall fall, or be situated, shall or may think proper or direct." The donation of these townships was not to any particular university, for none was then in existence in the territory embraced in said purchase, but for the purposes of a university which might at some subsequent time be established in the territory conveyed. Neither was the donation of said sections 16 and 29 to any particular townships, for the contract and letters patent show that the survey of the lands was yet to be made. Whether, therefore, the title to these sections and townships, upon the issuing of letters patent to the Ohio Company of Associates in 1792, passed to and vested in the agents of said company, in trust for the purposes for which they were donated, or whether the title was excepted and reserved by Congress and passed to and vested by operation of law in the legislature of the Northwest Territory after its organization in 1798, and thence to the state of Ohio upon its organization and admission into the Union in 1803, in trust for the several purposes for which they were donated, is a question about which there may be a difference of opinion. It seems clear, however, that if the title to these school and ministerial sections passed to and vested in the agents of said company in 1792, neither congress nor the legislature of the Northwest Territory had power to deal with them in 1802 and 1803 as they did.

But, as already observed, these lands appear to have been treated both by the legislature and the courts of the state since its organization as belonging to the state. It is true that the trustees of the original surveyed townships have always been charged with the care of them and have had the authority to lease them and collect and apply the rents, but this authority has been and is derived from the legislature. On the other hand, when either of these sections of land has been sold or the permanent lease thereof has been surrendered with a view to a purchase of the fee the deed has been made by the state. Section 1418 and following sections of Bates' Revised Statutes provides how school lands may be sold and permanent leases thereof be surrendered, and Sec. 1434 provides: "when the purchaser or lessee, his heirs or assigns have made payment in full,

the auditor shall give to such person a final certificate, containing in addition to the former one, (provided for in section 1429) the fact of payment in full and that said person is entitled to receive from the state a deed in fee simple for said premises on presentation of this certificate to the proper officer or officers." Then section 1438 provides that "all those lands granted by the congress of the United States for religious purposes, known as section 29, may be sold, or the permanent leases thereto surrendered, and said sale or surrender shall be regulated by and conducted according to the provisions of this chapter in relation to the sale of school lands and the surrender of permanent leases thereto."

In the light of these provisions which have stood on the statute book and been acted on for many years without question, the only rational conclusion is that the title to section 29, as well as to section 16, is to be treated as vested in the state for the uses and purposes for which the same was donated; and the better opinion seems to me to be that the legal title to both these sections was retained by congress (the language used in the contract and letters patent is "reserved and excepted from") until the organization of the territorial government, and that it then passed to and vested in it or its legislature by operation of law as a subject incident to and properly coming within its jurisdiction. As bearing upon this question the course of title to the two townships given in the same grant for the purpose of a university may be cited. On the 9th day of January 1802, the legislature of the Northwest Territory, acting as trustee for the proper application of these lands, passed an act establishing the American Western University and expressly vesting in it the title to said lands. On the 4th day of February, 1804, nothing having been done by said American Western University, the General Assembly of Ohio passed an act incorporating the Ohio University and vesting in it the lands which had been vested in the former university. These acts show that wherever the title to these lands may have been lodged after the purchase by the Ohio Company of Associates and before the organization of the territorial and state governments, it passed to and became vested in said governments or the legislatures thereof after their organization, for the power to vest the lands implies that they had them to vest.

But whether the theory advanced be the true one as to the course of the title to the school and ministerial lands in question or not, or whether the title, as counsel contend, vested in the agents of the Ohio Company of Associ-

ates in trust for the purposes named, and subsequently passed by operation of law and vested in the trustees of the original surveyed townships, it is not claimed that either section is subject to taxation until after sale or lease, and the only question is whether or not there is any statute taxing the leasehold interest. Section 20 of article 12 of the constitution does not tax property; it only provides that laws shall be passed taxing all property, real and personal, by a uniform rule according to its true value in money. Neither does this section attempt to exempt property from taxation, but it defines what property may be exempted by general laws of the legislature. Section 5 of article 12 provides that "no tax shall be assessed except in pursuance of law." The general taxing statute of the state is section 2731 which provides that "all property whether real or personal in this state, and whether belonging to individuals or corporations, * * * shall be subject to taxation, except only such as may be expressly exempted therefrom."

Now, an estate for years renewable forever in realty, granted for a gross sum, is realty within the meaning of this statute. 30 Ohio St., 276. But the interest of a lessee in a lease for less than 14 years, or for a greater period than that, if subject to revaluation at stated intervals, is not regarded as of substantial value. 54 Ohio St., 272.

But section 2731 also expressly provides that "all tracts of land set apart for school or ministerial purposes, and sold by and under authority of law, * * *, shall be subject to taxation as other lands in this state immediately after such sale; but school and ministerial lands shall not be sold for taxes until the purchase money therefor shall be fully paid," etc. The plain implication of this language is that school and ministerial lands are not taxable until after sold, and by express provision they cannot then be sold for taxes until the purchase money therefor has been fully paid.

Whether or not leased ministerial lands come within the exceptions named in section 2732, Revised Statutes, it is only necessary to observe that by the terms of section 2733 they are made subject to the same rule as leased school lands and those belonging to the state, and the former section expressly exempts both of these from taxation. But whether section 2732 expressly exempts ministerial lands or not, nowhere is there any authority to impose a tax on such leasehold although the lease may be for more than 14 years, if by the terms of the lease the lands are subject to revaluation. As section 2733 stood before the amendment of April 27, 1881, the lessee's interest in ministerial as well as school lands was taxable,

but by this amendment the right to tax was limited to leases of such lands for more than fourteen years and which were not subject to revaluation. As stated by Judge Shauck in the 54 Ohio St., case, cited above, where the lease is for a term of less than fourteen years, or if for a longer period it is subject to revaluation, "the lessee's interest would not be of substantial value." This being so, there would be nothing to tax. So, as I view the question, the charging of the defendants with taxes assessed upon the fee was wholly unauthorized, and as the leasehold interest of defendants, if taxable at all, (which I think I have shown it is not), is not regarded in law as of substantial value, the petition fails to state a cause of action and the demurrer must be sustained, and the plaintiff not desiring to plead further, it is considered that the defendants are entitled to judgment and the petition is dismissed at plaintiff's costs.

L. A. Edwards, prosecuting attorney, and O. E. Vollenweider, for plaintiff.

J. M. McGillivray, for defendants.